```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JUDY DELEO                       :    CIVIL ACTION
                                 :
     v.                          :
                                 :
LANDMARK THEATRES d/b/a          :
RITZ EAST, et al.                :    NO. 13-722
```

                            MEMORANDUM

McLaughlin, J.                                    February 26, 2015

       This action arises from a slip-and-fall accident that occurred outside of the Ritz East movie theater located at 125 South Second Street, Philadelphia, Pennsylvania.  The plaintiff, Judy DeLeo, filed a negligence action against the Philadelphia Parking Authority ("PPA") and the United States of America ("USA").  Both of these defendants filed motions for summary judgment.  The Court grants PPA's motion for summary judgment because PPA is immune from liability as a local agency.  The Court denies USA's motion for summary judgment because there is a disputed issue of material fact.

I.    Summary Judgment Record

       The Ritz East theater was contained within a building owned by USA through the National Park Service ("NPS") and leased to PPA.  In addition to the theater, the building contained a Chinese restaurant, a five-story parking garage, and

a night club.  The building is bordered by Front Street to the east, 2nd Street to the west, Ionic Street to the north, and Sansom Street and Sansom Walk to the south.  USA's Mot. Ex. 2 (hereinafter, the "Lease").

Sansom Street and Sansom Walk are of particular importance to this case.  Starting from 2nd Street, Sansom Street and Sansom Walk run west-to-east.  The western half, Sansom Walk, is a pedestrian walkway only and is closed to vehicles.  It is bordered by a park to the south.  The eastern half, Sansom Street, connects to Front Street on its eastern end and is open to both vehicular and pedestrian traffic.  Sansom Street is bordered by a private parking lot to the south, and bordered on the north by the South Walkway, which is open only to pedestrian traffic.  Sansom Walk and Sansom Street are separated by a gate.  Pl.'s Opp. to PPA's Mot. Exs. 2-3.

The South Walkway borders Sansom Street to the north, and is immediately adjacent to the building housing the Ritz East theater.  It is constructed with concrete, slate, and brick pavers.  The Chinese restaurant has outdoor seating on the South Walkway, and there are numerous trees and places to sit along the walkway.  The main entrance to the Ritz East theater is on the South Walkway.  Pl.'s Opp. to PPA's Mot. Exs. 2-3.

On January 28, 2011, DeLeo went with a friend to see a movie at the Ritz East theater.  It had recently snowed, and

there was an accumulation of a few inches of snow on the ground. After parking on 2nd Street, DeLeo and her friend walked down Sansom Walk and onto the South Walkway. The snow on the South Walkway had been partially cleared, but had not been treated for any ice or snow melt and was slippery with patches of ice. DeLeo Dep. 40:12-41:10, 42:24-44:10, 91:3-92:22.

To find better traction, DeLeo moved from the cleared path to the snowy area. She subsequently slipped on ice and fell. DeLeo suffered a left patellar fracture as a result of her fall. DeLeo Dep. 44:4-19, 52:17-20, 55:21-56:12.

There is a dispute over which defendant cleared snow and ice from the South Walkway. The Lease between PPA and USA provided that PPA would be solely responsible for "maintaining the condition of the adjacent sidewalks, pavements curbs and grounds on the Premises, in good condition, including without limitation, ensuring that the sidewalks, pavements and curbs are free of hazards and/or defects, and removal of snow and ice . . . ." Lease § 8.1(f). There is no language in the lease that carves out the South Walkway from PPA's general duty to maintain the sidewalks adjacent to the property. Steven Sims, USA's designee, testified that NPS did not engage in any snow or ice removal on the South Walkway. Morrotto Dep. 20:17-20; Sims Dep. 48:13-49:6.

Despite the language in the lease, PPA's designee, Rocco Morrotto, testified that PPA did not actually have the responsibility to maintain the South Walkway. Morrotto testified that NPS has, "over many, many, many years," maintained the South Walkway and removed any snow or ice that would accumulate on the South Walkway. Morrotto Dep. 21:5-14. Morrotto testified that PPA does not perform any maintenance or upkeep on the South Walkway, and that he personally observed NPS personnel clearing snow form the South Walkway. Morrotto Dep. 46:3-47:10, 49:25-50:5.

II. <u>Procedural History</u>

In addition to her claim against PPA and USA, DeLeo also initially filed a claim against Landmark Theatres d/b/a Ritz East ("Landmark") and Silver Holdco Inc. The parties stipulated to the dismissal of the claim against Landmark, and the Court dismissed the claim against Silver Holdco Inc.

III. <u>Summary Judgment Standard</u>

Under Fed. R. Civ. P. 56, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issue of

4

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Id. at 247-48.

IV.  Discussion

    A.  USA's Motion for Summary Judgment

        USA's motion for summary judgment is denied because there is a disputed issue of material fact:  whether NPS maintained the South Walkway.  This suit was brought against USA under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).  Because the incident occurred in Pennsylvania, Pennsylvania tort law is applicable under the FTCA.  Fisher v. United States, 441 F.2d 1288, 1289 (3d Cir. 1971).

        To establish a claim for negligence under Pennsylvania law, a plaintiff must show:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting

5

>injury; and (4) actual loss or damage resulting in harm to the interests of another.

Nw. Mut. Life Ins. Co. v. Babavan, 430 F.3d 121, 139 (3d Cir. 2005).

USA argues only that DeLeo cannot show that USA owed her a duty. Generally, under Pennsylvania law, a landlord out of possession is not liable for injuries suffered by third parties on the leased premises. Dinio v. Goshorn, 437 Pa. 224, 228-29 (1969); see also Hymes v. Great Lakes Warehouse, 2014 WL 1022462, at *3 (E.D. Pa. Mar. 17, 2014) (citing Dinio).

There are several exceptions to this general rule, two of which DeLeo argues apply here. First, "where the landlord retains control of a part of the leased premises . . . he is liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which he retains control . . . ." Smith v. M.P.W. Realty Co., 423 Pa. 536, 539 (1967). Second, "a landlord undertaking to repair the premises leased, and repairing them negligently thereby causing injury is liable for his tort." Green v. Independent Oil Co., 414 Pa. 477, 486 (1964).

There is testimony that, despite the provision in the lease creating a duty on the part of PPA to maintain the South Walkway, NPS employees in fact always maintained the walkway and cleared it of snow and ice. This evidence would be sufficient

for a jury to find that USA maintained control over the South Walkway.

In Juarbe v. City of Philadelphia, 431 A.2d 1073, 1080-81 (Pa. Super. Ct. 1981), the court held that a landlord retained control over a leased premises despite language in the lease giving the lessee the duty to maintain the premises. The landlord retained control by frequently inspecting the premises to ensure it complied with sanitary standards. Id. Repeated violations of these standards would cause the landlord to refuse to offer the tenant a renewal of the lease. Id.

Similarly, in Ozer v. Metromedia Restaurant Group, Steak & Ale of Pennsylvania, Inc., 2005 WL 525400, at *10 (E.D. Pa. Mar. 7, 2005), the court held that there was at least a question of fact over whether a landlord retained control of a parking lot where there was testimony that the landlord had arranged for repairs of the parking lot in the past.

USA does not argue that if its employees did maintain the South Walkway and clear it of snow that it would not have retained control over it. Rather, USA argues that Morrotto's testimony, on its own, cannot create an issue of disputed fact because it is self-serving and Morrotto does not work on the premises at issue. The fact that testimony is self-serving, however, does not mean it cannot create an issue of fact. See Waskovich v. Morgano, 2 F.3d 1292, 1295-96 (3d Cir. 1993).

7

Additionally, Morrotto testified that he personally witnessed NPS employees clearing snow from the South Walkway.  If a jury believes Morrotto's testimony, it could find that USA retained control of the South Walkway despite the provision in the Lease delegating that control to PPA.  USA's motion for summary judgment should therefore be denied.

    B.   <u>PPA's Motion for Summary Judgment</u>

PPA's motion for summary judgment is granted because PPA is immune from liability as a local agency.  Subject to certain exceptions, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. Ann. § 8541.  There is no dispute that PPA is a local agency, and that such immunity applies.

There are several exceptions to this general rule of immunity.  The exceptions relevant to this case are:

> (b) Acts which may impose liability. -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency . . .
>
>> (3) *Real property*. -- The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person

> intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include . . .
>  (iv) sidewalks . . .
>
> (7) *Sidewalks*. -- A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

42 Pa. Cons. Stat. Ann. § 8542.

PPA argues that the sidewalk exception does not apply, because although the South Walkway is a sidewalk, it is not "within the rights-of-way" of a street owned by PPA – PPA does not own any streets. PPA also argues that the real property exception does not apply because the South Walkway is a sidewalk and therefore by definition not real property.

DeLeo agrees that the sidewalk exception does not apply, but for a different reason – she claims that the South

9

Walkway is not a sidewalk.  She argues that a sidewalk must border a street and that Sansom Street is not a street.  Additionally, DeLeo argues that the South Walkway is more appropriately considered a "plaza" or "walkway".  Because the South Walkway is not a sidewalk, according to DeLeo, the real property exception should apply.

Pennsylvania courts deciding whether a walkway is a sidewalk have focused on whether the sidewalk is "within the rights-of-way of streets owned by the local agency."  42 Pa. Cons. Stat. Ann. § 8542(b)(7).  For example, in Snyder v. North Allegheny School Dist., 722 A.2d 239, 243 (Pa. Commw. Ct. 1998), the court held that the sidewalk exception did not apply when a plaintiff fell on a concrete landing adjacent to a driveway.  In order for the sidewalk exception to apply, the concrete landing must have been a "dedicated portion of a public right-of-way used for pedestrian traffic."  Id.  The driveway was owned by a school district and used by third parties with the permission of the school district; as such, it was not a public right-of-way.  Id.  Because the landing was not adjacent to a public right-of-way, the sidewalk exception did not apply.  Id.

In this case, it is undisputed that the South Walkway is adjacent to a street:  Sansom Street.  DeLeo's own exhibit refers to this location as Sansom Street, and she admits that it is used for vehicular traffic.  Pl.'s Opp. to PPA's Mot. 4, Ex.

10

3. Additionally, Steven Sims testified that the southern border of the property at issue was an active street: Sansom Street. Sims Dep. 36:7-23.

DeLeo argues that because Sansom Street is only incidentally used for vehicular traffic, is constructed with cobblestones instead of pavement, and lacks traffic control devices, a reasonable juror could conclude that Sansom Street is not a street. DeLeo does not cite to any evidence to support her claim that Sansom Street is only "incidentally used for vehicular traffic;" indeed, the only evidence she uses to support this contention describes Sansom Street as "an active street." Sims Dep. 36:7-23.

DeLeo has not produced enough evidence to convince a reasonable finder of fact that Sansom Street is not in fact a street. This fact is therefore not in dispute.

The South Walkway is a "dedicated portion of a public right-of-way used for pedestrian traffic." Snyder, 722 A.2d at 243. It is separated from Sansom Street by wooden posts, indicating that it is reserved solely for foot traffic. Pl.'s Opp. to PPA's Mot. Ex. 2.

DeLeo also argues that the sidewalk exception should not apply because the South Walkway is different in nature and character from sidewalks. She argues that because the South Walkway has trees, outdoor seating for a Chinese restaurant,

11

places to sit, and is made of brick pavers in addition to concrete that the South Walkway is more akin to a plaza than a sidewalk.

No reasonable finder of fact would find that the South Walkway is a plaza rather than a sidewalk based on this evidence. Numerous sidewalks in Philadelphia are constructed with brick rather than concrete and outdoor restaurant seating is a common sight. There is therefore no dispute that the South Walkway is a sidewalk.

PPA does not own Sansom Street, and thus cannot be sued under the sidewalk exception. PPA also cannot be sued under the real property exception because the South Walkway is a sidewalk, which is by definition not real property. PPA's motion for summary judgment is therefore granted.

An appropriate order shall issue.